Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, FL 33316
Telephone (954)-767-4819
Facsimile (954)-767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff, Chanel, Inc.

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York corporation<br><br>Plaintiff,<br><br>v.<br><br>HEATHER L. GARDNER a/k/a HEATHER BENJAMIN and COREY GARDNER, individually and d/b/a GARDNERINC.NET d/b/a SHOPWITHCLASS d/b/a DEZ9ERDREAMZ, and DOES 1-10,<br><br>Defendants. | Case No. 07-cv-6679-GBD-MHD<br><br>**CHANEL'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Plaintiff, Chanel, Inc., a New York corporation ("Chanel"), pursuant to Local Rule 56.1 hereby files its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment against Defendants Heather L. Gardner a/k/a/ Heather Benjamin and Corey Gardner, individually and d/b/a GardnerInc.net d/b/a ShopWithClass d/b/a Dez9erDreamz ("Defendants")

1

as to Counts I, II, III, IV, and V of the Complaint ("Compl."). In support of its Motion, Chanel submits the following material facts are undisputed:

I. **CHANEL'S RIGHTS**

1. Chanel is, and at all relevant times hereto has been, owner of the following United States Federal Trademark Registrations (the "Chanel Marks"):

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| C | 3,025,934 | December 13, 2005 |
| CC | 3,025,936 | December 13, 2005 |
| [CC] | 3,022,708 | December 6, 2005 |
| CC | 1,734,822 | November 24, 1992 |
| CC | 1,314,511 | January 15, 1985 |
| CC | 1,501,898 | August 30, 1988 |
| CC | 1,654,252 | August 20, 1991 |
| CHANEL | 1,733,051 | November 17, 1992 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 0,626,035 | May 1, 1956 |
| CHANEL | 1,241,265 | June 7, 1983 |
| CHANEL | 0,915,139 | June 15, 1971 |
| CHANEL | 3,134,695 | August 29, 2006 |

2

| | | |
|---|---|---|
| CHANEL | 3,133,139 | August 22, 2006 |
| CHANEL | 1,571,787 | December 19, 1989 |
| CHANEL | 0,955,074 | March 13, 1973 |

These marks are registered in International Classes 9, 14, 18, 25, and 26 and are used in connection with the manufacture and distribution of, among other things, high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods. (True and correct copies of the Federal Registrations for the Chanel Marks are attached hereto as Exhibit "A.")

2. Since the 1920s, Chanel has been engaged in the promotion, distribution, and sale in interstate commerce of high quality goods under various "CHANEL" and "CC MONOGRAM" trademarks identified above. (Declaration of Adrienne Hahn Sisbarro ("Hahn Decl.") ¶ 4, attached hereto as Exhibit "B.")

3. Genuine Chanel products are sold at Chanel boutiques throughout the United States at high quality, prestigious retail stores and via the Internet. During the more than eighty (80) years that Chanel has sold goods in interstate commerce under the Chanel Marks, Chanel has spent hundreds of millions of dollars to extensively advertise and promote its goods. In the last five years alone, Chanel's sales of high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and related goods have been well into many hundreds of millions of dollars. (Hahn Decl. ¶ 6.)

4. The Chanel Marks have acquired fame in the consumer market for wide variety products, including high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods. The Chanel Marks have come to symbolize the enormous goodwill of Chanel's products and accessories throughout the United States and the world. No other

3

manufacturer lawfully uses the Chanel Marks or any substantially similar marks for the same type of consumer goods. The Chanel Marks have never been abandoned. (Hahn Decl. ¶ 7.)

5. The Chanel Marks are vital to Chanel's business. The Chanel Marks represent virtually the entire value of the company's business and its associated image. Chanel suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time any third parties, including the Defendant, sell counterfeit goods bearing identical or substantially similar trademarks. (Hahn Decl. ¶ 8.)

## II. THE INVESTIGATION AND DEFENDANTS' INFRINGING ACTIVITIES

6. Defendants Heather L. Gardner and Corey Gardner are the owners and operators of the Internet websites, GardnerInc.net and DivineHandbags.net, and of the seller aliases, ShopWithClass and Dez9erDreamz. (Declaration of Robert Holmes, ("Holmes Decl.") ¶¶ 4, 8, 10 attached hereto as Exhibit "C;" Declaration of Lynnette Oka ("Oka Decl.") ¶¶ 8-9, 12, 14 attached hereto as Exhibit "D.")

7. Defendants have admitted to selling non-genuine Chanel items to the public. (Defs.' Answer ¶¶ 2, 4.)

8. Indeed, Defendants sold Chanel "replica" products through their website, GardnerInc.net. (Defs.' Answer ¶¶ 2, 4; Holmes Decl. ¶¶ 4-8.) Defendants sold at least one replica Chanel handbag via GardnerInc.net for $55.00. (Holmes Decl. ¶¶ 4-7.)

9. At all times relevant hereto, Defendants had actual knowledge of Chanel's exclusive right to use the Chanel Marks. (Defs.' Answer ¶ 3.)

10. At all times relevant hereto, the Defendants did not have the right or authority to use the Chanel Marks for any purpose. (Hahn Decl. ¶ 9.)

11. Chanel received information that Defendants were possibly selling handbags, wallets, watches, sunglasses, keyrings, shoes, and hair accessories under the Chanel Marks without Chanel's authorization through the Defendants' Internet website operating under the domain name GardnerInc.net and the seller aliases, ShopWithClass and Dez9nerDreamz. (Hahn Decl. ¶ 9.)

12. In November 2005, Chanel retained Rob Holmes of IPCybercrime.com, LLC, formerly The Holmes Detective Agency, a licensed private investigative firm located in Plano, Texas, to investigate the sale of counterfeit products bearing the Chanel Marks by the Defendants through the interactive website operating under the domain name, GardnerInc.net. (Hahn Decl. ¶ 10; Holmes Decl. ¶ 3.)

13. On or about November 14, 2005, Holmes conducted a "whois" search regarding the domain name GardnerInc.net through http://NetworkSolutions.com and determined the domain name was created on October 24, 2005 and registered under the name Heather Gardner. (Holmes Decl. ¶ 4 and Exhibit "1" attached thereto.)

14. In or about December 2005, Holmes accessed the Internet website operating under the domain name GardnerInc.net and placed an order for the purchase of a Chanel branded handbag for $55.00, including shipping. The payee information provided listed "Heather Gardner; Dez9erBoutique@yahoo.com." (Holmes Decl. ¶ 5.)

15. On December 28, 2005, Holmes received a package containing the Chanel branded handbag he purchased from GardnerInc.net, which was sent via U.S. Mail. The return address on the outer packaging listed "Heather Gardner, 204 Eleanor St., Horseheads, NY 14845." (Holmes Decl. ¶ 6 and Exhibit "2" attached thereto.)

16. The handbag bearing the Chanel Marks purchased from the Defendants through their website, GardnerInc.net, by Holmes was sent to Chanel, together with an appropriate Chain of Custody, for analysis. (Holmes Decl. ¶ 7.)

17. The handbag purchased by Holmes was delivered for inspection to Adrienne Hahn Sisbarro, Chanel's Director, Legal Administration. (Hahn Decl. ¶ 12.) Hahn is very familiar with Chanel's genuine goods and trained to detect counterfeits. (Hahn Decl. ¶ 3.) Hahn determined the handbag was counterfeit. (Hahn Decl. ¶ 12.)

18. Hahn also reviewed website printouts reflecting the Chanel branded products offered for sale by the Defendants through their Internet website operating under the domain name GarnderInc.net. She concluded the products offered for sale on the website were non-genuine Chanel products. (Hahn Decl. ¶ 13; True and correct copies of the website pages which were reviewed by Hahn are attached hereto as Exhibits "E" through "I.")

19. On or about January 18, 2006, a representative for Chanel, Lynnet Oka, sent a cease and desist letter on behalf of Chanel to Defendants via Certified Mail and Email, requesting that they, among other things, cease all sales of products bearing counterfeit Chanel Marks. The letter sent by Certified Mail was accepted and signed by Corey Gardner. Additionally, Oka did not receive a rejection regarding the emails she sent. (Oka Decl. ¶ 7 and Exhibit "1" attached thereto.)

20. On or about January 18, 2006, Oka received an email from Defendants using the email address Corey@GardnerInc.net in response to Chanel's January 18, 2006 cease and desist letter. In the email, Defendants stated, "I will remove your items from my site. . . . As for Chanel items I have sold slim to none. I just added them on my site. I will remove them today." (Oka Decl. ¶ 8 and Exhibit "2" attached thereto.)

21. On or about January 18, 2006, Oka subsequently received an email response from Defendants stating, "Your items have all come off my site and will not be put back on." (Oka Decl. ¶ 9 and Exhibit "3" attached thereto.)

22. On or about January 24, 2006, Holmes received an email from Corey@GardnerInc.net explicitly recognizing that Chanel had issued a warning to their site regarding the sale of their products. Consequently, the email stated that all Chanel products had to be removed from the GardnerInc.net site. (Holmes Decl. and Exhibit "3" attached thereto.)

23. On or about January 26, 2006, Oka accessed the Internet website GardnerInc.net in order to capture and download the pages of the website reflecting the products bearing various Chanel Marks offered for sale. (Oka Decl. ¶ 10 and Exhibit "I.")

24. On or about January 26, 2006, Oka sent a second cease and desist letter on behalf of Chanel to Defendants informing them of the counterfeit Chanel items remaining on their site. Oka again requested that they, among other things, cease all sales of products bearing counterfeit Chanel Marks. (Oka Decl. ¶ 11 and Exhibit "4" attached thereto.)

25. Subsequently, Oka received an email response from Defendants stating, "I will remove them right now and email you with confirmation of this," on or about January 26, 2006. (Oka Decl. ¶ 12 and Exhibit "5" attached thereto.)

26. To date, Oka has not received a further response from the Defendants. (Oka Decl. ¶ 13.)

27. On or about September 29, 2006, Oka accessed the Internet website GardnerInc.net in order to capture and download the pages of the website reflecting the products bearing various Chanel Marks offered for sale. On the GardnerInc.net site, Oka found a link titled "50 – AA Chanel Bags added" with "For Chanel Click Here" immediately under the

aforementioned title. The link led her to a Yahoo! photo album listing hundreds of Chanel items for sale under the seller alias ShopWithClass. (Oka Decl. ¶ 14 and Exhibit "J.")

28. Hahn reviewed website printouts reflecting the Chanel branded products offered for sale by the Defendants via their Yahoo! photo album operating under the seller alias ShopWithClass. She concluded the products offered for sale on the website were non-genuine Chanel products. (Hahn Decl. ¶ 15; True and correct copies of the website pages which were reviewed by Hahn are attached hereto as Exhibit "J.")

29. On or about December 18, 2006 Oka accessed the Yahoo! photo album for the seller alias ShopWithClass in order to capture and download the pages of the website reflecting the products bearing various Chanel Marks offered for sale. (Oka Decl. ¶ 15; True and correct copies of the relevant pages from the Yahoo! photo album Oka captured December 18, 2006 are attached as Exhibit "K.")

30. Hahn reviewed the website printouts reflecting the Chanel branded products offered for sale by the Defendants on December 18, 2006 via their Yahoo! photo album operating under the seller alias ShopWithClass. She concluded the products offered for sale on the website were non-genuine Chanel products. (Hahn Decl. ¶ 15.)

31. In or about April 2007, Chanel received information that Defendants were again selling various products under the Chanel Marks without Chanel's authorization through the Defendants' Internet website operating under the domain name DivineHandbags.net. As part of its ongoing investigations regarding the sale of counterfeit "replica" Chanel products, Chanel again retained Mr. Holmes to verify Defendants' ownership of the site. (Hahn Decl. ¶ 15; Holmes Decl. ¶ 9.)

32. On or about April 19, 2007, Holmes conducted a domain name search of DivineHandbags.net through http://whois.domaintools.com and determined the domain name was created on April 8, 2007 and registered under the name Corey Gardner. Additionally, the contact email address listed Dez9erBoutique@yahoo.com, the same email address provided in the payee information from Holmes' investigative buy. *See* Paragraph 12, *supra*. (Holmes Decl. ¶ 10 and Exhibit "5" attached thereto.)

33. On or about April 19, 2007, Oka again accessed the Yahoo! photo album for the seller aliases ShopWithClass and DesignerWholesale07 in order to capture and download the pages of the website reflecting the products bearing various Chanel Marks offered for sale. (Oka Decl. ¶ 15; True and correct copies of the relevant pages from the Yahoo! photo album Oka captured on April 19, 2007 are attached as Exhibit "L.")

34. On or about April 19, 2007, Oka also accessed the Internet website DivineHandbags.net in order to capture and download the pages of the website reflecting the products bearing various Chanel Marks offered for sale by the Defendants. (Oka Decl. ¶ 16; True and correct copies of the relevant pages from the website DivineHandbags.net Oka captured April 19, 2007 are attached as Exhibit "M.")

35. Hahn reviewed the website printouts reflecting the Chanel branded products offered for sale by the Defendants on April 19, 2007 via their Yahoo! photo album operating under the seller aliases ShopWithClass and DesignerWholesale07. She concluded the products offered for sale on the website were non-genuine Chanel products. (Hahn Decl. ¶ 15.)

36. Hahn also reviewed the website printouts reflecting the Chanel branded products offered for sale by the Defendants on April 19, 2007 via their Internet website,

DivineHandbags.net. She concluded the products offered for sale on the website were non-genuine Chanel products. (Hahn Decl. ¶ 17.)

Respectfully submitted,

GIBNEY, ANTHONY & FLAHERTY, LLP

Dated: SEPT. 15, 2008

*John Macaluso*

John Macaluso (JM 2058)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

OF COUNSEL

STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, FL 33316
Telephone (954)-767-4819
Facsimile (954)-767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.