Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, FL 33316
Telephone (954)-767-4819
Facsimile (954)-767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff, Chanel, Inc.

## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHANEL, INC., a New York corporation | ) | Case No. 07-cv-6679-GBD-MHD |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CHANEL'S MEMORANDUM IN** |
| v. | ) | **SUPPORT OF ITS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| HEATHER L. GARDNER a/k/a HEATHER | ) | |
| BENJAMIN and COREY GARDNER, | ) | |
| individually and d/b/a GARDNERINC.NET | ) | |
| d/b/a SHOPWITHCLASS d/b/a | ) | |
| DEZ9ERDREAMZ, and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

Page

I. INTRODUCTION.................................................1

II. STANDARD OF ADJUDICATION..................................2

III. ARGUMENT.................................................3

    A.    Jurisdiction and Procedural Posture...............3

    B.    Chanel's Rights..................................3

    C.    Defendants' Infringing Acts.......................6

    D.    Defendants' Liability............................7

        1.    Defendants Are Liable for trademark Infringement and Counterfeiting as a Matter of Law.........7

            a. Strength of the Chanel Marks.............. 9

            b. Similarity of the Marks..................11

            c. Proximity of the Products................12

            d. Bridging the Gap.........................13

            e. Evidence of Actual Confusion.............13

            f. Defendants of Good Faith in Adopting their Mark.....................................14

            g. Quality of Defendants' Products...........16

            h. Sophistication of Consumers...............16

         2.    Defendants Are Liable Under Section 43(a) of the Lanham Act, Common Law Unfair Competition, and Common Law Trademark Infringement ...........18

  IV. REMEDIES.................................................20

    A.   A Permanent Injunction Should Be Entered..........20

  V.   CONCLUSION..........................................22

Plaintiff, Chanel, Inc., a New York corporation ("Chanel") hereby moves this Court for entry of Summary Judgment as to the liability against defendants Heather L. Gardner a/k/a/ Heather Benjamin and Corey Gardner, individually and d/b/a GardnerInc.net d/b/a ShopWithClass d/b/a Dez9erDreamz ("Defendants"). Chanel prays that such summary judgment include, *inter alia*, (1) a finding of liability against Defendants on all Counts of the Complaint; (2) a finding that the Defendants' wrongful activities were engaged in maliciously, willfully, and intentionally, or with willful blindness to Chanel's rights; and (3) permanent injunctive relief against future infringement of Chanel's intellectual property rights.

## MEMORANDUM

## I.    INTRODUCTION

Chanel is suing the Defendants for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), trademark dilution (Count III), common law trademark infringement (Count IV), and common law unfair competition (Count IV). (Docket No. 1.) This suit arises out of the Defendants' fraudulent promotion, advertisement, distribution, and sale of counterfeit goods, specifically handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods (the "Defendant's Goods"), bearing spurious marks which are identical copies of Chanel's federally registered trademarks as identified in Paragraph 8 of Chanel's Complaint (the "Chanel Marks"). Id. The Defendants were intentionally falsely representing to the public, at least in a post-sale setting, that Defendants' Goods were authentic products authorized for sale by Chanel. In reality, the undisputed facts demonstrate that Defendants' Goods are worthless counterfeit items.

## II.    STANDARD OF ADJUDICATION

Summary judgment motions are reviewed in accordance to the standard stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  See also Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

As the Supreme Court has stated, in deciding a motion for summary judgment, a judge need only decide whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the judge finds that no reasonable trier of fact could find for the non-moving party, summary judgment must be granted.  Id.

Once the movant has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party "will not prevail by relying on a mere scintilla of evidence to support its position," but rather, must create more than mere doubt as to the material facts at issue.  Anderson, 477 U.S. at 252.  In other words, when the nonmoving party's evidence is "merely 'colorable' or 'not significantly probative,' the Court may grant summary judgment."  Id. at 249-50.  In the context of trademark infringement cases, "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely," summary judgment is appropriate.  Cadbury Beverages, Inc. v. Cott Co., 74 F.3d 474, 478 (2d Cir. 1996).  See also Lang v. Retirement Living Publishing Co, 949 F.2d 576, 582 (2d Cir. 1991); Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112, 115 (2d Cir. 1984).

In the instant action, summary judgment against the Defendants is appropriate because, as will be demonstrated below, Chanel's undisputed evidence clearly supports the allegations set forth in Counts I, II, IV, and V of its Complaint, and the Defendants have no valid defense as a matter of law.

## III.    ARGUMENT

### A.  Jurisdiction and Procedural Posture

This Court has subject matter jurisdiction over the instant matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). Venue in this Judicial District is proper under 28 U.S.C. § 1391, as the underlying wrongful activities involved in this action occurred within this Judicial District.

Chanel initiated this action against Defendant Heather L. Gardner on July 24, 2007 through the filing of a Complaint for Federal Trademark Counterfeiting and Infringement (Count I), Federal False Designation of Origin (Count II), Trademark Dilution (Count III), Common Law Trademark Infringement (Count IV), and Common Law Unfair Competition (Count V). (Docket No. 1.) Chanel subsequently filed its First Amended Complaint to include Defendant Corey Gardner on August 21, 2007. (Docket No. 4.) Defendants were properly served with the Summons and Complaint on September 28, 2007. (Docket Nos. 5 and 6.) The Declarations and accompanying evidence filed in support of this Motion wholly support a finding that Defendants knowingly violated Chanel's rights under the Lanham Act and New York Law. Accordingly, Summary Judgment pursuant to Fed. R. Civ. P. 56 should be entered against Defendants.

### B.  Chanel's Rights

Chanel is a corporate entity duly organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York. (Declaration of

Adrienne Hahn Sisbarro ("Hahn Decl.") ¶ 1 attached to Chanel's Statement of Undisputed Material Facts as Exhibit "B.")[1]  Chanel designs and marks a wide range of accessories and costume jewelry, such as handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and related goods, which are sold throughout the world, including the United States. (Hahn Decl. ¶6.)

Chanel is the owner of the following trademarks, which are the subject of the following United States Federal Trademark Registrations (the "Chanel Marks"):

| MARK | REG. NO. | REG. DATE |
|---|---|---|
| | 3,025,934 | December 13, 2005 |
| | 3,025,936 | December 13, 2005 |
| | 3,022,708 | December 6, 2005 |
| | 1,734,822 | November 24, 1992 |
| | 1,314,511 | January 15, 1985 |
| | 1,501,898 | August 30, 1988 |
| | 1,654,252 | August 20, 1991 |
| CHANEL | 1,733,051 | November 17, 1992 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 0,626,035 | May 1, 1956 |

---

[1] All evidentiary materials cited herein refer to Chanel's Statement of Undisputed Material Facts filed concurrently herewith.

| CHANEL | 1,241,265 | June 7, 1983 |
| CHANEL | 0,915,139 | June 15, 1971 |
| CHANEL | 3,134,695 | August 29, 2006 |
| CHANEL | 3,133,139 | August 22, 2006 |
| CHANEL | 1,571,787 | December 19, 1989 |
| CHANEL | 0,955,074 | March 13, 1973 |

These marks are registered in International Classes 9, 14, 18, 25, and 26 and are used in connection with the manufacture and distribution of, among other things, high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods. (Hahn Decl. ¶ 5; True and correct copies of the Federal Registrations for each of the Chanel Marks listed above are attached as Exhibit "A.")

The Chanel Marks have never been assigned or licensed to the Defendants. (Hahn Decl. ¶ 9.) The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. (Hahn Decl. ¶ 7.) Moreover, Chanel has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Chanel Marks. (Hahn Decl. ¶ 6.) Accordingly, the Chanel Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1). (Hahn Decl. ¶ 7.)

Furthermore, Chanel has extensively used, advertised, and promoted the Chanel Marks in the United States in association with accessories and costume jewelry, including handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and related goods, and has carefully monitored and policed the use of the Chanel Marks. (Hahn Decl. ¶ 7.) As a result of Chanel's efforts, members of the consuming public readily identify products bearing the Chanel Marks as being high quality merchandise sponsored and approved by Chanel. (Hahn Decl. ¶ 7.)

Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of high quality products, including handbags, wallets, watches, sunglasses, keyrings, shoes, and hair accessories. (Hahn Decl. ¶ 7.) Moreover, all of the Chanel Marks, except Registration Numbers 3,022,708, 3,025,936, and 3,133,139, are incontestable pursuant to 15 U.S.C. § 1065, and are therefore presumed to have secondary meaning. See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 196 (1985).

### C. Defendants' Infringing Acts

Defendants are the owners and operators of the websites operating under the domain names "GardnerInct.net" and "DivineHandbags.net," and the seller aliases "Dez9erDreamz," "ShopWithClass," and "DesignerWholesale07." (Declaration of Robert Holmes ("Holmes Decl.") ¶¶ 4-10 attached as Exhibit "C;" Declaration of Lynnette Oka ("Oka Decl.") ¶¶ 5-16 attached hereto as Exhibit "D.") Furthermore, Defendants are the moving, conscious, and dominant forces behind the sale of handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods bearing counterfeits of the Chanel Marks. (Hahn Decl. ¶¶ 15, 18; Holmes Decl. ¶¶ 4-10; Oka Decl. ¶¶ 5-16.)

However, at all times relevant, Defendants have had full knowledge of Chanel's ownership of its intellectual property rights, including its exclusive right to use and license those rights and the goodwill associated therewith. (Defs.' Answer ¶¶ 2, 4.) Defendants do not have, nor have they ever had, the right or authority to use the Chanel Marks for any purpose. (Hahn Decl. ¶ 9.) However, despite their known lack of authority to do so, Defendants have been promoting, and otherwise advertising, distributing, offering to sell, and selling at least accessories and costume jewelry, handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and related goods, bearing counterfeit marks which are identical or substantially

similar to the registered Chanel Marks.  (Hahn Decl. ¶¶ 15, 18; Holmes Decl. ¶¶ 4-10 with supporting Exhibits; Oka Decl. ¶¶ 5-16; True and correct copies of relevant pages from Defendants' website GardnerInc.net and DivineHandbags.net, as well as pages from their Yahoo! photo album attached as Exhibits "E" through "M.")

Defendants obviously adopted the Chanel Marks with the intention of reaping the benefits of Chanel's world-renowned reputation for making high caliber goods.  Defendants state that they use a disclaimer indicating that their goods are non-genuine Chanel items.  (Defs.' Answer ¶ 2.)  Furthermore, in their websites, Defendants state their goods are "exactly like the originals" and encourage others to buy mass quantities of their counterfeit goods, stating that customers could make "$250 plus profit" through selling these worthless items.  (Ex. H.)  More importantly, Defendants use a rating system to assert that their counterfeit goods are of a purported quality in comparison to other counterfeit goods.  (Exhibits F, H, I, J and M.) Defendants' use of a disclaimer and of the rating system is clearly a deceptive ploy to lure consumers into believing that Defendants' goods are of comparable quality to that of genuine Chanel goods.

### D.  <u>Defendants' Liability</u>

#### 1.  <u>Defendants Are Liable for Trademark Infringement and Counterfeiting as a Matter of Law.</u>

The Lanham Act provides one of the most valuable and vital protections to trademark owners – "the right to control the quality of the goods manufactured and sold under the holder's trademark." <u>El Greco Leather Prods. Co. v. Shoe World, Inc.</u>, 806 F.2d 392, 395 (2d Cir. 1986), <u>cert. denied</u>, 484 U.S. 817, 108 S. Ct. 71, 98 L. Ed. 2d 34 (1987).  A defendant becomes liable for trademark infringement if it uses in commerce, without consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a registered mark which "is likely to

cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Pursuant to 15 U.S.C. § 1114, in order to prevail in its trademark infringement claim, Chanel must establish that (1) it has legally protectable trademarks and (2) Defendants' misuse of the trademarks create a likelihood of confusion among consumers. The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996). See also Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 454 (S.D.N.Y. 2005); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). A defendant's intent to sell counterfeit goods need not be proven in a trademark infringement case because sellers are strictly liable for violations of the Lanham Act. Cartier Int'l B.V. v. Ben-Menachem, No. 06 Civ. 3917, 2008 WL 64005, at *12 (S.D.N.Y. Jan. 3, 2008).

The first element of a trademark infringement claim is met since most of the Chanel Marks are federally registered and have become "incontestable" under 15 U.S.C. §§ 1058 and 1065. See Jamelis Grocery, Inc., 378 F. Supp. 2d at 454-55. Moreover, it is undisputed that Chanel is the sole owner of the Chanel Marks, which are registered, valid, and thus protectable marks. (Hahn Decl. ¶ 5; Exhibit A.) See also 15 U.S.C. § 1057(b); Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1076 (2d Cir. 1993) ("[A] mark registered by it owner shall be prima facie evidence of the registrant's exclusive right to use the mark in commerce on the product. . . . ."); Ben-Menachem, No. 06 Civ. 3917, 2008 WL 64005, at *11 (S.D.N.Y. Jan. 3, 2008) ("These registrations are *prima facie* evidence of the validity of the trademarks Plaintiffs seek to protect, as well as the exclusive right of Plaintiffs to use Plaintiffs' Marks in commerce . . . .").

This Circuit uses an eight-factor test in determining the second element, likelihood of confusion. Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996). These

factors, as outlined in Polaroid Corp. v. Polorad Elecs., Corp., are (a) the strength of the owner's mark; (b) the degree of similarity between the two marks; (c) the proximity of the products; (d) likelihood that the prior owner will "bridge the gap"; (e) evidence of actual confusion; (f) defendant's good faith in adopting its mark; (g) the quality of the defendant's product; and (h) the sophistication of the buyers. 287 F.2d 492, 495 (2d Cir. 1961). See also Cadbury Beverages, Inc., 73 F.3d at 478. These factors are not accorded equal weight, but rather, are weighed separately and determined in accordance with the particular factual setting. Lois Sportswear USA, Inc. v. Levi Strauss & Co., 799 F.2d 867, 872 (2d Cir. 1986).

Nonetheless, courts in the Second Circuit have stated "where counterfeit marks are involved, it is not 'necessary to perform the step-by-step examination of each Polaroid factor because counterfeit marks are inherently confusing." Jamelis Grocery, Inc., 378 F. Supp. 2d at 455. Accord, Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (stating that "counterfeits, by their very nature, cause confusion"); Topps Co. v. Gerrit J. Verburg Co., No. 96 Civ. 7302, 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) (noting that analysis under the Polaroid factors is unnecessary "where the marks are identical, and the goods are also identical and directly competitive").

In any event, as will be demonstrated below, the overwhelming majority of the Polaroid factors weigh in favor of Chanel, as a matter of law.

### a.  Strength of the Chanel Marks

In assessing the strength of a trademark, courts examine the marks' "tendency to identify the goods sold under [them] as emanating from a particular source." Lois Sportswear USA, Inc., 799 F.2d at 873. More specifically, this factor measures (1) the marks' inherent strength; and (2) its' acquired strength. TCPIP Holding Co. v. Haar Comm'ns, Inc., 244 F.3d 88, 100 (2d Cir.

2001).  Courts look to the marks' distinctiveness in analyzing the first prong of the test, and "consumer recognition" in analyzing the second prong. Id.

A mark's distinctiveness is measured in accordance to the spectrum of protectability, which ranges across five categories, in ascending order of conceptual strength: generic, descriptive, suggestive, arbitrary, and fanciful. Id. See also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).  "The more arbitrary and fanciful the mark in relation to the goods on which it is use, the more the consumer is likely to assume that a similar mark designates the owner of the first as the source of the goods." TCPIP Holding Co., 244 F.3d at 100.  Accord, Two Pesos, Inc., 505 U.S. at 768.  In this case, it cannot be seriously disputed that the Chanel Marks are strong, arbitrary, and fanciful marks, satisfying the first prong of the test. (Exhibit A.)

Moreover, the Chanel Marks also satisfy the second prong of the test because they qualify as strong marks under a consumer recognition analysis.  The Chanel Marks have acquired secondary meaning in the consumer market for its reputation of high quality, luxury merchandise. (Hahn Decl. ¶¶ 6-7).  See also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189 (1985) (stating that incontestable marks are presumed to have secondary meaning). Since the 1920s, Chanel has been engaged in the manufacture, promotion, distribution, and sale in interstate commerce of high quality products under the Chanel trademarks. (Hahn Decl. ¶ 4.) During the more than 80 years that Chanel has sold its products in interstate commerce under the Chanel Marks, Chanel has spent hundreds of millions of dollars to extensively advertise and promote its goods. (Hahn Decl. ¶ 6.)  In the last five years alone, Chanel's sales of high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and related goods have been well into the hundreds of millions of dollars. (Hahn Decl. ¶ 6.)  As a result of Chanel's

efforts, the Chanel Marks enjoy widespread recognition and are each prominent in the minds of the consuming public. (Hahn Decl. ¶¶ 6-7.)  Indeed, Chanel products bearing the Chanel Marks are among the best selling luxury goods in the United States. (Hahn Decl. ¶¶ 6-7.)

Thus, there is no genuine issue of material fact regarding the strength of the Chanel Marks.

### b.  Similarity of the Marks

In cases where the infringer deals with counterfeit goods and uses identical marks, like in the instant matter, courts rarely need to look beyond the marks themselves as evidence of likelihood of confusion. Duty Free Apparel, Ltd., 286 F. Supp. 2d at 287.  Accord, Topps Co. v. Gerrit J. Verburg Co., No. 96 Civ. 7302, 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996).  If the similarity of the two marks would lead the ordinary consumer to assume that they come from the same source, confusion is likely.  TCPIP Holding Co., 244 F.3d at 101.

Third Circuit has aptly advised that "both precedent and common sense counsel that similarity of the marks takes on great prominence" when identical marks are used on goods that are directly competing.  A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 214 (3d Cir. 2000).  Indeed, a court in the District of New Jersey held,

> It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety.  Under these circumstances, the likelihood of consumer confusion, mistake, or deception is clear.

Microsoft Corp v. CMOS Techs., Inc., 872 F. Supp. 1329, 1335-36 (D.N.J. 1994).  See also 2 J. McCarthy, Trademarks and Unfair Competition § 23:3 (2d ed. 1984) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the

appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.").

Defendants clearly use marks which are virtually identical to the Chanel Marks. If there are any discrepancies, they are not readily noticeable to the untrained eye because the overall impression of the marks is the same. Moreover, since the Marks appear in their entirety, consumers will undoubtedly be confused as to the true source and sponsorship of Defendants' goods. (Compare Chanel's Federal Registrations (Exhibit A) with Exhibits E through J.) Thus, this factor weighs entirely in Chanel's favor.

### c. Proximity of the Products

Likelihood of confusion is greater where there is a close relationship between the products. See Lois Sportswear USA, Inc., 799 F.2d at 874 (finding this factor to weigh in favor of the trademark owner where both products were identical); Yale Elec. Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928) (stating that "unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful"). Hence, this factor requires courts to evaluate the nature of the owner's and alleged infringer's products themselves to determine whether it would be reasonable for consumers to associate them or see them as related. Id. In other words, courts are concerned with the public's perception of who created the product.

This factor is easily met because the Defendants use their counterfeit trademarks the same type of products Chanel uses its Chanel Marks for – specifically, handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories – and other related goods. Moreover, Defendants advertise their products through at least one of the same marketing channels as Chanel, the Internet. See Cadbury Beverages, Inc., 73 F.3d at 480 (stating that considerations in analyzing this factor include "the class of customers to whom the goods are sold, the manner in

which the products are advertised, and the channels through which the goods are sold"). Accordingly, because the products Defendants concurrently sold using counterfeit Chanel Marks are substantially similar, if not virtually identical to the merchandise Chanel currently sells, this factor completely weighs in favor of Chanel.

### d.  Bridging the Gap

Where a defendant uses its marks "in the same area of commerce as plaintiff's use, the issue of likelihood of bridging the gap is of no relevance." TCPIP Holding, Co., 244 F.3d at 102. This factor is used to analyze whether the owner of the trademark at issue will enter the market of the alleged infringer. Lois Sportswear USA, Inc., 799 F.2d at 874.

Both Chanel and the Defendants sell and distribute their products using the at least one of the same marketing channels, the Internet, in the same geographical distribution areas, the United States. Thus, the conditions of purchase for both parties are unmistakably identical. Moreover, both target the same general consumers, and as such, Chanel is directly competing with the Defendants' products. See Cadbury Beverages, Inc., 73 F.3d at 480 (stating that where the parties sell the same product through the same channels of trade to the same class of customers, "there is no dispute that members of the general public would be confused"). Accordingly, this factor undoubtedly weighs in favor of a finding that a likelihood of confusion exists.

### e.  Evidence of Actual Confusion

Courts do not find evidence of actual confusion necessary because *likelihood* of confusion is the standard in trademark infringement case. Cadbury Beverages, Inc., 73 F.3d at 482 (emphasis added). Accord, Lois Sportswear USA, Inc., 799 F.2d at 875 (stating that "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since [. . .] the Act requires only a likelihood of confusion as to source"). However, courts do consider

13

the post-sale confusion context – potential purchasers viewing the counterfeit goods would regard them as authentic and any imperfections found will be attributed to the trademark owner. See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Lecoultre Watches, Inc., 221 F.2d 464, 466 (2d Cir. 1955) (finding that in copying the trademark owner's clock, infringer's "wrong thus consisted of the fact that such a visitor would be likely to assume that the clock was [the trademark owner's] clock"). Post-sale consumer confusion herein is inevitable due to Defendants' exact copying of the Chanel Marks. See also Lois Sportswear USA, Inc., 799 F.2d at 873 ("In the post-sale context, this striking similarity no doubt will cause consumers to transfer the goodwill they feel for [trademark owner] to [infringer], at least initially."); Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 382 (2d Cir. 1997) ("[L]ikelihood of confusion test concerns not only potential purchasers but also the general public.").

Thus, consumers, whether it be at the point-of-sale or post-sale, viewing the Defendants' goods will likely be confused as to the source and sponsorship of the Defendants' products, as they concurrently use marks that are identical to Chanel's registered trademarks. (Exhibits E through J.) As such, this factor also weighs in Chanel's favor.

### f. Defendants' Good Faith in Adopting Their Mark

A defendant's intent is relevant to the extent that it demonstrates that "the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill." Cadbury Beverages, Inc., 73 F.3d at 482-83. See also Mastercrafters Clock & Radio, Co., 221 F.2d at 467 (stating that intent of copier is "decidedly relevant" where the copying is unlawful and there is a likelihood of confusion). In this case, Defendants obviously adopted the Chanel Marks with the intention of reaping the benefits of Chanel's world-renowned reputation for

making high caliber goods. Defendants state that they use a disclaimer indicating that their goods are non-genuine Chanel items. (Defs.' Answer ¶ 2.) Furthermore, in their websites, Defendants state their goods are "exactly like the originals" and encourage others to buy mass quantities of their counterfeit goods, stating that customers could make "$250 plus profit" through selling these worthless items. (Ex. H.)

Other courts have considered the effect of a disclaimer similar to the one used by Defendants and found the use of such disclaimer to be significant evidence of bad faith. For example, in Rolex Watch USA, Inc. v. Jones, 99 Civ. 2359(DLC), 2000 WL 1528263, at *3 (S.D.N.Y. October 13, 2000), the Honorable Judge Cote held as follows:

> Moreover, Jones' bad faith is manifest. Jones' websites show that Jones markets his products as replicas of the Plaintiff's products. Jones undeniably "adopted [his] mark[s] with the intention of capitalizing on Plaintiff[s]' reputation and goodwill and any confusion between his and the senior user[s] product[s]". Lang v. Retirement Living Pub. Co. Inc., 949 F.2d 576, 583 (2d Cir. 1981).

> Footnote 1 – the fact that Jones' websites contain a disclaimer stating that his products are replicas, and that "[by] purchasing one of these replicas by [sic] agrees not to sell or represent them as genuine," is not evidence of good faith, as Jones clearly sought to capitalize on the value and renown of the Plaintiff's marks. It also does not diminish the likelihood of confusion. Likelihood of confusion does not focus solely on the party purchasing a product from the defendant; "post-sale confusion as well as point-of-sale confusion [is] actionable under the Lanham Act." Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 218 (2d Cir. 1999).

Moreover, Defendants have actual of the Chanel Marks, as well as Chanel's right and authority to exclusively use those marks. (Defs.' Answer ¶¶ 2, 4; Holmes Decl. ¶ 8.) Yet, even after acknowledging that they have been warned about their unlawful activities, Defendants voluntarily chose to continue to engage in counterfeiting Chanel products. (Holmes Decl. ¶ 10; Oka Decl. ¶¶ 9-15.) In so doing, Defendants have continuously used identical and substantially similar marks in advertising, promoting, and selling their goods. See Duty Free Apparel, Ltd.,

286 F. Supp. 2d at 287 (stating that "confusing the customer is the whole purpose of creating counterfeit goods"); Topps Co. v. Gerrit J. Verburg Co., No. 96 Civ. 7302, 1996 WL 719381, at *6 (S.D.N.Y. Dec. 13, 1996) (noting that "counterfeits, by their very nature, cause confusion").

Thus, Defendants cannot seriously contend that they did not intend to reap the benefits of Chanel's world-famous reputation for the purpose of defrauding the public.  Accordingly, this factor heavily weighs in Chanel's favor.

### g. Quality of Defendants' Products

In analyzing this factor, courts examine "whether the senior user's reputation could be 'tarnished by [the] inferior merchandise of the junior user.'" Cadbury Beverages, Inc., 73 F.3d at 483 (citations omitted).  The Declarations filed in support of this motion clearly demonstrate that Defendants are advertising, promoting, offering to sell, and selling worthless counterfeit items bearing the Chanel Marks.  (Holmes Decl. ¶¶ 4-10; Oka Decl. ¶¶ 5-14.)  Moreover, Chanel has confirmed that the quality of Defendants' products is different, and inferior, to that of genuine Chanel products.  (Hahn Decl. ¶¶ 3; 12-14.)  Inevitably, this will result in irreparable harm to Chanel.  (Hahn Decl. ¶ 16; Oka Decl. ¶ 15.)

Thus, it is unequivocally clear that Chanel's reputation will be harmed if Defendants are allowed to continue their counterfeiting activities through their sale of non-genuine, worthless goods using marks which are identical to the registered Chanel Marks.

### h. Sophistication of Consumers

Consumers viewing products bearing the Chanel Marks are unlikely to exercise heightened care before making purchasing decisions because consumers presume and rely on Chanel's reputable name for making high quality goods.  Where an alleged infringer uses an identical mark for identical products, the degree of care used by purchasers will likely be low, as

consumers will be unable to distinguish between the infringer's mark and the owner's mark. As Judge Learned Hand has aptly stated, "His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. . . . for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask." Yale Elec. Corp. v. Robertson, 26 F.2d 972, 974 (2d Cir. 1928).

As the Defendants are using identical or substantially similar representations of the Chanel Marks, (Exhibits E through M), consumers viewing the Defendants' products may reasonably assume that the products being sold are commensurate to that of Chanel's genuine products and outstanding quality. Chanel has been making luxury products under the Chanel Marks since the 1920s, and has acquired fame in the consumer market for a wide variety of goods, including necklaces and watches. (Hahn Decl. ¶¶ 4, 7.) See Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971) (holding that even though the ordinary purchaser would be expected to make "more than a casual inspection" before buying an expensive camera, such inspection would be of doubtful value because the cameras from each of two different sources were both labeled "Exakta")

Additionally, when reviewing this factor, courts strongly consider the price of the products. The greater the price of a product, the more careful the typical potential purchaser is expected to be, thereby reducing the likelihood of confusion. McGregor Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979) superseded by rule, Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1044 (2d Cir. 1992) (as to issue of de novo review by appellate court). Thus, it is likely consumers will exercise less care when selecting goods from the Defendants' websites, because of the low price of the goods. Id. ("the average purchaser of an automobile will, no doubt, devote more attention to examining different products and

17

determining their manufacturer or source than will the average purchaser of a ball of twine"). While the counterfeit goods sold by the Defendant are not exactly balls of twine, they are relatively inexpensive products which consumers may not spend a great deal of time selecting. Accordingly, this factor also weighs in Chanel's favor.

In sum, Chanel's evidence shows the Defendants were using identical trademark designations on identical products sold to identical markets through identical marketing channels, all to benefit from Chanel's world renowned reputation. No reasonably jury could find to the contrary. In view of the foregoing, it is abundantly clear that Chanel has demonstrated that a likelihood of confusion exists herein. Chanel has, therefore, proven that summary judgment as to Count I of the Complaint is appropriate.

2. Defendants Are Liable Under Section 43(a) of the Lanham Act, Common Law Unfair Competition, and Common Law Trademark Infringement.

Chanel is also entitled to summary judgment on Counts II, IV, and V of its Complaint, which sets forth causes of action for false designation of origin pursuant to Section 43(a) of the Lanahm Act, 15 U.S.C. § 1125(a) (Count II), common law unfair competition (Count IV), and common law trademark infringement (Count V), respectively.

Chanel has framed its Federal claims under Sections 32(1), 15 U.S.C. § 1114(1), and 43(a), 15 U.S.C. § 1125(a) of the Lanham Act for trademark infringement / counterfeiting (Count I) and false designation of origin/unfair competition (Count II), respectively. While Section 32 only protects registered marks, Section 43(a) affords protection against a wide variety of unfair competition, including infringement of both registered and unregistered marks. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992).

As discussed above, Chanel has demonstrated the Defendants have committed multiple acts of willful trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act. Chanel's analysis includes a detailed examination of the eight factors used by the Second Circuit to determine likelihood of confusion. Accordingly, whether the violation is called infringement, unfair competition, or false designation of origin, the test for liability is identical – is there a likelihood of confusion? Two Pesos, Inc., 505 U.S. at 780. See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source.") (emphasis in original). Additionally, the analysis of New York common law claims for trademark infringement and unfair competition is also the same as for the federal trademark infringement and unfair competition claims. See Standard & Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon [both . . . ] the Lanham Act [. . .] and [the] common law [causes of action . . .] is the showing of likelihood of confusion as to the source or sponsorship of defendant's products."); Cartier Int'l B.V. v. Ben-Menachem, No. 06 Civ. 3917, 2008 WL 64005, at * (S.D.N.Y. Jan. 3, 2008) ("The same acts that constitute trademark counterfeiting and unfair competition under federal laws give rise to Plaintiffs' claims of common law trademark infringement and unfair competition, as well as unfair competition under New York law."); Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y 2005) ("It is well established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law 'mirror the Lanham Act claims.'").

Although under New York law, common law unfair competition requires the additional showing of bad faith, <u>Nadel v. Play-by-Play Toys & Novelties, Inc.</u>, 208 F.3d 368, 383 (2d Cir. 2000) (stating that bad faith must be found "[t]o determine that misappropriation has occurred"), a presumption of bad faith is found, as a matter of law, where an infringer has used a counterfeit mark. <u>Centaur Commc'ns, Ltd. V. A/S/M Commc'ns, Inc.</u>, 830 F.2d 1217, 1227 (2d Cir. 1987) ("[A]wareness [that a mark is in use] can give rise to an inference of bad faith."); <u>Ben-Menachem</u>, No. 06 Civ. 3917, 2008 WL 64005, at *13 (S.D.N.Y Jan. 3, 2008) ("[A] presumption of bad faith attaches to the use of a counterfeit mark. (citations omitted) Defendants' sale of the Counterfeit Products serves to establish bad faith under New York law, and therefore summary judgment is appropriate as to these claims.").

In view of the foregoing authority, because with the respect to Count I Chanel has proven likelihood of confusion under Section 32 of the Lanham Act, Chanel has necessarily also proven Defendants' liability under Count II of the Complaint for false designation of origin pursuant to Section 43(a) of the Lanham Act, Count IV of the Complaint for common law unfair competition, and Count V of the Complaint for common law trademark infringement. Thus, summary judgment is also appropriate as to Counts II, IV, and V.

## IV.    REMEDIES

### A. A Permanent Injunction Should be Entered.

Injunctive and other equitable relief may be granted in accordance with the principles of equity to prevent violations of trademark laws pursuant to 15 U.S.C. § 1116. Thus, this Court should permanently enjoin the Defendant from infringing any of Chanel's intellectual property rights, including the Chanel Marks. The risk of continuing infringement is likely, owing to

strong consumer demand for Chanel's products. (Hahn Decl. ¶ 7.)  Granting a broad permanent injunction is therefore warranted.

Permanent injunctive relief is warranted in cases where a plaintiff has made a showing that it has succeeded on the merits of the claim, there is no adequate remedy at law, and it will suffer irreparable harm if relief is not granted.  L. & J.G. Stickley, Inc. v. Cosser, No. 06-2819-cv, 2007 WL 4171651, at **1 (2d Cir. Nov. 27, 2007).  In the instant matter, Chanel has unequivocally established that it will succeed in the merits of the case by establishing a likelihood of confusion.

The showing of irreparable harm requires that a plaintiff demonstrate "a reasonable basis for the belief" that the plaintiff is likely to be damaged as a result of the infringement. Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir.1980).  The Second Circuit has stated that "[t]he fact that the parties' products compete in the same market weighs in favor of a finding of irreparable harm." See Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir.1994).  Clearly, Chanel will continue to suffer irreparable injury to its reputation and goodwill for as long as Defendants are allowed to continue their counterfeiting and infringing activities. (Hahn Decl. ¶ 19.)  Furthermore, irreparable harm is presumed because Chanel has proven that it will succeed on the merits of its claim.  See Jamelis Grocery, Inc., 378 F. Supp. 2d 459 ("[I]n the Second Circuit, 'a showing of likelihood of confusion establishes irreparable harm.'").  Accord, Genessee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Duty Free Apparel, Ltd., 286 F. Supp. 2d at 290 (stating that "a showing of likelihood of confusion establishes irreparable harm").

In any event, Chanel will undoubtedly continue to endure irreparable harm by having its reputation in the hands of another.  Moreover, Defendants' complete knowing disregard for

Chanel's rights additionally warrants the issuance of a broad permanent injunction against infringement of any of Chanel's intellectual property rights, including those at issue in this case.

## V.    CONCLUSION

For the foregoing reasons, Chanel respectfully requests that the Court:

(1)    Enter Summary Judgment finding Defendants Heather L. Gardner and Corey Gardner, individually and jointly liable on Counts I, II, IV, and V of the Complaint;

(2)    Enter a finding in accordance with 15 U.S.C. § 1117(b) that the Defendants knowingly used counterfeits of the Chanel Marks in connection with the offering for sale and sale of goods in commerce and that such use likely caused consumer confusion;

(3)    Enter a permanent injunction against Defendants; and

(4)    Enter a finding that Chanel is entitled to an entry of statutory damages award pursuant to 15 U.S.C. § 1117(c) in an amount to be determined by the Court.

Dated this *15th* day of September, 2008.

Respectfully submitted,
GIBNEY, ANTHONY & FLAHERTY, LLP

John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

OF COUNSEL
STEPHEN M. GAFFIGAN, P.A.
312 S.E. 17th Street, Second Floor
Ft. Lauderdale, Florida 33316
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.