Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
Amy Celeste Van Eepoel (AV 1224)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: JMacaluso@Gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, FL 33316
Telephone (954)-767-4819
Facsimile (954)-767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff, Chanel, Inc.

### THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York corporation | Case No. 07-cv-6679-GBD-MHD |
| Plaintiff, | |
| v. | **DECLARATION OF ADRIENNE HAHN SISBARRO IN SUPPORT OF CHANEL'S MOTION FOR SUMMARY JUDGMENT** |
| HEATHER L. GARDNER a/k/a HEATHER BENJAMIN and COREY GARDNER, individually and d/b/a GARDNERINC.NET d/b/a SHOPWITHCLASS d/b/a DEZ9ERDREAMZ, and DOES 1-10, | |
| Defendants. | |

1.  My name is Adrienne Hahn Sisbarro, and I am employed by Chanel, Inc. ("Chanel"), as Director, Legal Administration. I have been employed by Chanel since 1988. Chanel is a corporation duly organized under the laws of the State of New York with its principal

place of business in the United States located at Nine West 57th Street, New York, New York 10019.

2. I am over 18 years of age and have personal knowledge of the facts set forth herein and, if called upon to do so, I could and would competently testify to the following facts in support of Chanel's Motion for Summary Judgment against Defendants Heather L. Gardner a/k/a/ Heather Benjamin and Corey Gardner, individually and d/b/a GardnerInc.net d/b/a ShopWithClass d/b/a Dez9erDreamz ("Defendants").

3. In my capacity as Chanel's Director, Legal Administration, I am responsible, in part, for Chanel's trademark and anti-counterfeiting efforts in the United States. As a result, I am fully familiar with most aspects of the manufacture, sale, and distribution of genuine Chanel products, including high quality handbags, wallets, watches, sunglasses, keyrings, shoes, and hair accessories, and I have been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies of the same.

4. Since the 1920s, Chanel has been engaged in the manufacture, promotion, distribution, and sale in interstate commerce of high quality products under the Chanel trademarks.

5. Chanel is the owner of the following trademarks, which are the subject of the following United States Federal Trademark Registrations (the "Chanel Marks"):

| **Mark** | **Reg. No.** | **Reg. Date** |
|---|---|---|
| CC (logo) | 3,025,934 | December 13, 2005 |
| CC (logo) | 3,025,936 | December 13, 2005 |
| CHANEL (logo) | 3,022,708 | December 6, 2005 |

| Mark | Registration No. | Date |
|---|---|---|
| (CC logo) | 1,734,822 | November 24, 1992 |
| (CC logo) | 1,314,511 | January 15, 1985 |
| (CC logo) | 1,501,898 | August 30, 1988 |
| (CC logo) | 1,654,252 | August 20, 1991 |
| CHANEL | 1,733,051 | November 17, 1992 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 0,626,035 | May 1, 1956 |
| CHANEL | 1,241,265 | June 7, 1983 |
| CHANEL | 0,915,139 | June 15, 1971 |
| CHANEL | 3,134,695 | August 29, 2006 |
| CHANEL | 3,133,139 | August 22, 2006 |
| CHANEL | 1,571,787 | December 19, 1989 |
| CHANEL | 0,955,074 | March 13, 1973 |

These marks are registered in International Classes 9, 14, 18, 25, and 26 and are used in connection with the manufacture and distribution of, among other things, high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods. True and correct copies of the Federal Registrations for each of the Chanel Marks are attached as Exhibit "A" to Chanel's Statement of Undisputed Material Facts.

6.   Chanel products are sold at Chanel boutiques throughout the United States, at high quality, prestigious retail stores, and via the Internet. During the more than 80 years that Chanel has sold its products in interstate commerce under the Chanel Marks, Chanel has spent

hundreds of millions of dollars to advertise and promote its goods extensively. In the last five years, Chanel's sales of high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and other goods have been well into many millions of dollars.

7. As a result of the foregoing, the Chanel Marks have acquired fame in the consumer market for a wide variety of products, including high quality handbags, wallets, watches, sunglasses, keyrings, shoes, hair accessories, and various other goods. The Chanel Marks have come to symbolize the enormous goodwill of Chanel's products throughout the United States and the world. No other manufacturer uses the Chanel Marks or any substantially similar marks for similar goods. The Chanel Marks have never been abandoned.

8. The Chanel Marks are vital to Chanel's business, as the marks represent virtually the entire value of the company and its associated image. Chanel suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time any third party, including the Defendants, sells counterfeit goods bearing identical or substantially similar trademarks.

9. Chanel received information that Defendants were possibly selling handbags, wallets, watches, sunglasses, keyrings, shoes, and hair accessories under the Chanel Marks without Chanel's authorization through the Defendants' Internet website operating under the domain name GardnerInc.net and the aliases ShopWithClass and Dez9nerDreamz. The Chanel Marks have never been assigned or licensed to Defendants. Therefore, Defendants do not have, nor have they ever had, the right or authority to use the Chanel Marks for any purpose.

10. In or about November 2005, as part of its ongoing investigations regarding the sale of counterfeit "replica" Chanel products, Chanel retained Robert Holmes of IPCybercrime.com, LLC ("IP Cybercrime"), formerly the Holmes Detective Agency, to investigate the suspected sales of counterfeit Chanel products by the Defendants.

11. In or about December 2005, Mr. Holmes purchased a handbag bearing one or more of the Chanel Marks at issue in this matter via the Internet website GardnerInc.net. On or about December 28, 2005, Mr. Holmes received the handbag and delivered the same to my office. See Declaration of Robert Holmes in Support of Chanel's Motion for Summary Judgment, together with supporting Exhibits.

12. I personally inspected and analyzed the handbag purchased by Mr. Holmes from Defendants via GardnerInc.net and determined the handbag to be a non-genuine Chanel product. I reached this conclusion based on my observations that the workmanship and materials are different than those used on genuine Chanel handbags. Additionally, the hang tag, interior label and lining material all differ from that of genuine Chanel handbags of this type.

13. I also personally reviewed printouts reflecting the various Chanel branded products offered for sale by the Defendants through the Internet website operating under the domain name GardnerInc.net, and I concluded the products were non-genuine Chanel products. I reached this conclusion through my visual inspection of the products and the pricing of the Chanel branded items listed, which are far below the prices of genuine Chanel products, and because I personally know that Chanel does not conduct business with the Defendants nor do they have the right or authority to use the Chanel Marks. I also noted that some of the items were styles that do not have an exact genuine Chanel style match and that some items were shown with packaging and tags that are not used in connection with genuine Chanel products. True and correct copies of the printouts I reviewed are attached to Chanel's Statement of Undisputed Material Facts as Exhibits "E," "F," "G," "H," and "I."

14. I also personally reviewed printouts reflecting the various Chanel branded products offered for sale by the Defendants via their Yahoo! photo album operating under

Defendants' seller aliases ShopWithClass and DesignerWholesale07, and I concluded the products were non-genuine Chanel products. I reached this conclusion through my visual inspection of the products, and because I personally know that Chanel does not conduct business with the Defendants nor do they have the right or authority to use the Chanel Marks. I also noted that some of the items were styles that do not have an exact genuine Chanel style match and that some items were shown with packaging and tags that are not used in connection with genuine Chanel products. True and correct copies of the printouts I reviewed are attached to Chanel's Statement of Undisputed Material Facts as Exhibits "J," "K," and "L."

15. In view of the foregoing, I can confirm that the handbag sold by the Defendants via GardnerInc.net to Chanel's private investigator, Robert Holmes, under the Chanel Marks is a non-genuine counterfeit product and is of a different quality than genuine Chanel products. I can also confirm that the products the Defendants were offering for sale under the Chanel Marks through the Internet website operating under the domain name GardnerInc.net are non-genuine Chanel products.

16. In or about April 2007, Chanel received information that Defendants were again selling various products under the Chanel Marks without Chanel's authorization through the Defendants' Internet website operating under the domain name DivineHandbags.net. As part of its ongoing investigations regarding the sale of counterfeit "replica" Chanel products, Chanel retained Mr. Holmes, who verified Defendants' ownership of the site.

17. I personally reviewed printouts reflecting the various Chanel branded products offered for sale by the Defendants through the Internet website operating under the domain name DivineHandbags.net, and I concluded the products were non-genuine Chanel products. I reached this conclusion through my visual inspection of the products and the pricing of the Chanel

branded items listed, which are far below the prices of genuine Chanel products, and because I personally know that Chanel does not conduct business with the Defendants nor do they have the right or authority to use the Chanel Marks. I also noted that some of the items were styles that do not have an exact genuine Chanel style match and that some items were shown with packaging and tags that are not used in connection with genuine Chanel products. True and correct copies of the printouts I reviewed are attached to Chanel's Statement of Undisputed Material Facts as Exhibit "M."

18. In view of the foregoing, I can confirm that the products the Defendants were offering for sale under the Chanel Marks through the Internet website operating under the domain name DivineHandbags.net are non-genuine Chanel products.

19. As a result of the availability of the counterfeit products being offered by the Defendants, Chanel is highly likely to experience irreparable damage to its reputation among consumers unless the infringing activity alleged in the Complaint is stopped.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated this _12th_ day of September, 2008.

_Adrienne Hah Sisbarro_
ADRIENNE HAHN SISBARRO