**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHANEL, INC.,

                         Plaintiff,

                -against-

HEATHER L. GARDNER AND COREY
GARDNER,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER
07 Civ. 6679 (GBD)(MHD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2 1 JAN 2011

GEORGE B. DANIELS, United States District Judge:

Plaintiff Chanel, Inc. brings this action against Defendants Heather L. Gardner and Corey Gardner, individually and as GardnerInc.net, ShopWithClass, and Dez9erDreamz, alleging that Defendants violated Plaintiff's federally registered trademarks by advertising, promoting, distributing, and selling counterfeit Chanel products online. This Court granted Plaintiff's unopposed motion for summary judgment on Plaintiff's claims for statutory trademark counterfeiting and infringement,  statutory false designation of origin pursuant to the Lanham Act, and Plaintiff's common law trademark infringement, and unfair competition pursuant to New York law.

This Court referred the matter to Magistrate Judge Michael H. Dolinger for an inquest on damages and a determination of whether injunctive or other equitable relief was warranted. Magistrate Judge Dolinger issued a Report and Recommendation ("Report") recommending the Court: (1) award statutory damages to Plaintiff in the amount of $36,000.00, attorneys' fees in the amount of $21,828.40, along with costs in the amount of $575.00; and (2) issue a permanent

injunction barring Defendants from using any of Chanel's trademarks in connection with the advertisement, promotion, distribution, or sale of any unauthorized or counterfeit goods.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report.  28 U.S.C. § 636(b)(1).  When there are objections to the Report, the Court must make a de novo determination of those portions of the Report to which objections are made.  Id.; see also Rivera v. Barnhart, 432 F. Supp. 2d 271, 273 (S.D.N.Y. 2006).  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c).  It is not required, however, that the Court conduct a de novo hearing on the matter.  See United States v. Raddatz, 447 U.S. 667, 676 (1980).  Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding those portions to which objections were made.  Nelson v. Smith, 618 F.Supp. 1186, 1189-90 (S.D.N.Y. 1985) (quoting Hernandez v. Estelle, 711 F.2d 619, 620 (5th Cir. 1983)).  When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record."  Adee Motor Cars, LLC v. Amato, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted).

In his report, Magistrate Judge Dolinger advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  No party timely objected to the Report.  This Court adopts the Report's recommendation in its entirety.

### Damages

Under the Lanham Act, a plaintiff is entitled to recover actual damages, the infringer's profits, litigation costs, and in exceptional cases, attorney's fees on successful claims for trademark infringement, false designation of origin, or willful trademark dilution.  15 U.S.C. §

1117(a). However, a plaintiff may elect to collect statutory damages in lieu of actual damages when actual damages are difficult to calculate. 15 U.S.C. § 1117(c); Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 406 (2d Cir. 1989). Plaintiff elected to recover statutory damages. In light of the difficulty of proving actual damages or profits, as is often the case when counterfeiters are involved, Magistrate Judge Dolinger properly accepted Plaintiff's request for statutory damages. See Burberry Ltd. v. Euro Moda, Inc., 2009 WL 4432678, at *2 (S.D.N.Y. Dec. 4, 2009) (collecting cases)(citations omitted).

Section 1117(c) establishes the minimum and maximum statutory damage awards a Court can grant. See 15 U.S.C. § 1117(c). The award shall be "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." Id. § 1117(c)(1). However, "if the court finds that the use of the counterfeit mark is willful, [the damage award shall be] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." Id. § 1117(c)(2). Use of a counterfeit mark is willful if the defendant has actual knowledge that it is infringing Plaintiff's copyright or if it recklessly disregards the high probability that it was infringing. See Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 503 (S.D.N.Y. 2008) (citing to NFL v. Primetime 24 Joint Venture, 131 F. Supp. 2d 458, 475 (S.D.N.Y. 2001)). Additionally, a defendant's failure to respond either to plaintiff's summary judgment motion or to its application for damages during an inquest can demonstrate willfulness. See Euro Modo, Inc., 2009 WL 4432678, at *3 (citing to Chloe v. Zarafshan, 2009 WL 2956827, at *7 (S.D.N.Y. Sep. 15, 2009) ("While defendants did not technically default, they did not respond to the summary judgment motion or to the inquest on statutory damages. By virtue of their de facto default, they are deemed willful infringers.").

3

The Magistrate Judge properly found that Defendants willfully infringed Plaintiff's mark. The record establishes that Defendants had knowledge of the Chanel trademark and that they deliberately sought to capitalize on it. Chanel's three separate cease-and-desist letters provided Defendants with actual knowledge that they were infringing Chanel's trademarks. See Oka Decl. ¶ 7; Exs. 1, 4, see also Gaffigan Decl. ¶ 2; Ex. 1. Defendants, nevertheless, continued to offer Chanel-branded products for sale. See Oka Decl. ¶¶ 15-16; Exs. L-M. Indeed, Defendants acknowledged that the products bearing the marks of Chanel and other high-end designers were "quality replica handbags" available at "very low prices." Id. Ex. M. Further, Defendants' failure to respond either to Plaintiff's summary judgment motion or to its application for damages further strengthens a finding of willfulness. See Euro Modo, Inc., 2009 WL 4432678, at *3.

The Lanham Act does not provide guidance on how a court should determine the amount of statutory damages, only limiting the consideration to "what the court finds just". See 15. U.S.C. § 1117(a). See also Louis Vuitton Malletier v. Veit, 211 F.Supp.2d 567, 583 (E.D.Pa. 2002). However, courts routinely look towards Section 504(c) of the Copyright Act, which also allows for statutory damages to be imposed against the willful infringer, and its corresponding caselaw for guidance. See Malletier v. Carducci Leather Fashions, Inc., 648 F.Supp.2d 501 (S.D.N.Y. 2009); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004); Sara Lee Corp. v. Bags of N.Y., Inc., 36 F.Supp.2d 161, 166 (S.D.N.Y.1999). A court should consider "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing

4

material produced; and (7) the potential for discouraging the defendant." See Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting Fitzgeral Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir. 1986)).

Magistrate Judge Dolinger, therefore, considered the proper factors in determining the amount of damages. Magistrate Judge Dolinger weighed Defendants' failure to provide the financial information requested by Plaintiff on numerous occasions. Id. See Pl. Suppl. Mem. Law at 4-5; Oka Decl. ¶ 7; Ex. 1; Gaffingan Decl. ¶ 2; Ex. 1. Moreover, Defendants' willful and persisting infringements despite Plaintiff's efforts to avoid litigation also militate against them. See id. Given defendant's continued sale of the infringing goods despite Chanel's multiple cease-and-desist letters, damages should reflect the need to deter and to discourage Defendants. In further consideration of the high value of Chanel's trademarks and the effort and money expended for their protection, Magistrate Judge Dolinger properly adopted Plaintiff's recommendation of a baseline award of $3,000.00 per counterfeit mark, per type of goods sold.[1]

However, Plaintiff's evidence failed to demonstrate that defendants infringed on sixteen of plaintiff's trademarks on seven different types of goods. See Oka Decl. Exs. E-M. In support of its motion for summary judgment, Plaintiff submitted 90 pages of evidence containing images of allegedly infringing products from defendants' websites. However, Plaintiff identified specific instances of infringement on only eight of those pages. See Gaffigan Decl. Ex. 3 (citing Exs. E. F at 2; Ex. H at 1; Ex. 1 at 2; Ex. J at 13; Ex. K at 1; Ex. L at 6, 8; Ex. M at 1)). For each of the sixteen trademarks, the column on plaintiff's chart labeled "Citation to Examples of Defendants' Infringements" contains only a single citation to one page listing multiple images of

---

[1] As did Magistrate Judge Dolinger, this Court declines to adopt the formalistic methodology employed by Plaintiffs to reach that amount (trebling the statutory minimum on account of defendants' willfulness and doubling the product for purposes of deterrence). While Plaintiff did not cite to the source of this methodology, it seems it is rooted in Chanel's previous litigation of another trademark infringer.

products, yet fails to identify which of the products on the cited page bears the relevant trademark. The poor image quality renders an independent examination of which products bear the relevant Chanel trademark difficult. Magistrate Judge Dolinger properly declined to undertake such an independent inspection of the hundreds of products depicted in the printouts. See Chanel, Inc. v. Louis, 2009 WL 4639674, at *13 (magistrate judge properly refused to shoulder burden of determining which images from various website printouts correlated to which Chanel trademarks). Magistrate Judge Dolinger properly accepted Plaintiff's representation that only six trademarks appear on the cited pages. Specifically, the Magistrate Judge correctly found that Defendants' handbags infringed trademarks 3,025,934; 1,734,822; 1,314,511; Defendants' hair clip infringed trademark 3,025,936; Defendants' cuff bracelet infringed trademark 1,501,898; and Defendants' sunglasses infringed trademark 3,134,695. However, the Magistrate Judge was unable to readily identify any product bearing the other ten trademarks in Plaintiff's submissions. Accordingly, Magistrate Judge Dolinger reasonably calculated the statutory damages based on the six trademarks for which Plaintiff provided adequate proof of infringement, rather than the sixteen initially asserted.

Further, Magistrate Judge Dolinger properly determined from Plaintiff's evidence that Defendants used these six trademarks on only four different types of goods – namely, handbags, hair accessories, jewelry, and sunglasses – and not on seven types of goods as Plaintiff urged. Since each of the six trademarks was proven to have been used on only one of the four types of goods, the proper calculation of damages is the baseline award of $3,000 multiplied by the six Chanel trademarks infringed and by the one type of product sold by Defendants bearing each infringed trademark, yielding a total damages award of $18,000.00. See 15 U.S.C. § 1117(c). Yet considering Defendant's persistent infringement as well as their pattern of giving Chanel false

6

assurances, it is doubtful that an award of $18,000.00 will provide adequate deterrence. See

Gucci Am., Inc.,315 F. Supp. 2d at 520. Magistrate Judge Dolinger, thus, properly doubled the

award on Plaintiff's Lanham Act claims to $36,000.00 in statutory damages.

### Injunction

As to Plaintiff's request for a permanent injunction, Magistrate Judge Dolinger properly

determined that Plaintiff was entitled to a permanent injunction pursuant to 15 U.S.C. § 1116(a).

In order to obtain a permanent injunction under the Lanham Act, a plaintiff must (1) succeed on

the merits and (2) demonstrate irreparable harm if the relief is not granted.  See e.g., Gucci Am.,

Inc. v. Curveal Fashion, 2010 WL 308303, at *2 (S.D.N.Y.  Jan. 20, 2010); Burberry Ltd. &

Burberry USA v. Designers Imports, Inc., 2010 WL 199906, at *11 (S.D.N.Y. Jan. 19, 2010).

To prevail on the merits of a trademark infringement claim, a plaintiff must prove that (1) it has

legally protectable trademarks, and (2) defendants' misuse of the trademarks creates a likelihood

of confusion among customers.  See The Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d

955, 960 (2d Cir. 1996); Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448,

454 (S.D.N.Y. 2005).

Magistrate Judge Dolinger properly found that both requirements were sufficiently

satisfied to warrant a permanent injunction. Defendants' liability for counterfeiting establishes

Plaintiff's success on the merits. See Gucci Am., Inc., 2010 WL 308303, at *2.  Generally a

Court must examine the Polariod factors to determine a likelihood of confusion; however,

"where counterfeit marks are involved, a court need not engage in a Polariod analyss because

'counterfeit marks are inherently confusing'". See Fendi Adele S.R.L. v. Burlington Coat

Factory Warehouse Corp., 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010)  (citing to Chloe v.

DesignersImports.com USA Inc., No. 07 Civ. 1791(CS), 2009 WL 1227927, at *6 (S.D.N.Y.

Apr. 30, 2009); Gucci Am., Inc. v. Tyrrell-Miller, 678 F.Supp.2d 117, 119-20 (S.D.N.Y.2008)).
Therefore, this Court only needs to determine that the goods are counterfeit and the Defendants
distributed, offered for sale or sole the items. Id. Both requirements are easily met in this case.

Because Plaintiff has established both required factors, this Court grants Plaintiff's
request for a permanent injunction pursuant to 15 U.S.C. § 1116.

### Attorney's Fee's

Under the Lanahm Act, a court may award reasonable attorneys' fees to the prevailing
party in "exceptional cases." 15 U.S.C. § 1117(a). Courts have construed "exceptional cases" to
include cases where the court has found that the infringement was willful. See Patsy's brand, Inc.
v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003) (citing Bambu Sales, Inc. v. Ozak
Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995)). Attorney's fees are specifically recoverable
under 15 U.S.C. §1117(b) for willful infringement. Given the determination that Defendants'
infringement was willful, Magistrate Judge Dolinger also properly concluded that an award of
reasonable attorneys' fees is appropriate. 15 U.S.C. § 1117(b).

The measure of the fee award turns on the courts assessment of a "presumptively
reasonable fee." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
522 F.3d 182, 190 (2d Cir. 2008).  In determining a reasonable fee, a court should consider (1)
the number of hours actually spent by counsel and other personnel that was reasonably necessary
to the successful outcome for the client and (2) the reasonable hourly rates for counsel, a
criterion most recently described as "the rate a paying client would be willing to pay." Id. at
190.

In determining how much attorney time should be compensated, the Court looks initially
to the amount of time spent on each category of tasks, as reflected in contemporaneous time

8

records, and then decides how much of that time was "reasonably expended." See Clarke v.

Frank, 960 F.2d 1146, 1153 (2d Cir. 1992); New York Ass'n for Retarded Children, Inc. v.

Carey, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983). If the court finds that some of the time was

not reasonably necessary to the outcome, it should reduce the time for which compensation is

awarded. See e.g., Hensley v. Eckerhart, 461 U.S. 424, 434-35 (1983).  Ultimately, the moving

party bears the burden of demonstrating that the rates it seeks are reasonable.  See Farbotko v.

Clinton Co., 433 F.3d 204, 208-09 (2d Cir.2005); Cruz v. Local Union No. 3 of Int'l Bhd. Of

Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Louis Vuitton Malletier v. Apex Creative

Int'l Corp., 2010 WL 23320, at *9 (S.D.N.Y. Jan. 5, 2010). Plaintiff, however, failed to meet its

entire burden.

Plaintiff sought to recover a total of $25,129.50 in attorneys' fees incurred in bringing

this action, comprised of $17,079.50 paid to the firm Gibney Anthony & Flaherty, LLP ("Gibney

Anthony") and $8,050.00 paid to solo practitioner Stephen M. Gaffigan, Esq.  However, given

that this matter was largely uncontested and fairly straight forward, Plaintiff had no reasonable

need to hire two distinct sets of counsel. See Days Inn Worldwide, Inc. v. Amar Hotels, Inc., 05

Civ. 10100(KMW)(KNF), 2008 WL 2485407 at *10 (S.D.N.Y. June 18, 2008) (reducing

plaintiff's fees by 75 percent from $20,057.54 to $5,014.38 because the case involved a settled

area of law and the defendant defaulted). The record suggests that over the course of two years

Gibney Anthony's participation was limited to reviewing and revising documents initially

drafted by Mr. Gaffigan. See Gaffigan Decl. ¶¶ 5 and 8. Gibney Anthony's time records also

reflect several hours spent on internal meetings and communications with Gaffigan regarding the

developments in the case. See id. While perhaps internally useful, Magistrate Judge Dolinger

properly concluded the fees incurred as result of such expenditures should not be shifted to

9

Defendants, particularly in light of the minimal role played by Gibney Anthony in the overall litigation. See id.

In discounting a fee award, the court may either disallow certain hours or apply an across-the-board percentage reduction in compensable hours. E.g., Hensley, 424 U.S. at 436-37. Such reductions are particularly appropriate for inefficient or duplicative work. Id. at 434-35; In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 231, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application"). The latter approach is particularly appropriate where the application for fees is voluminous, "as a practical means of trimming fat from a fee application." Dooney & Bource, Inc., 2007 WL 1284013, at *1 (quoting McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 540 F. 3d 91, 96 (2d Cir. 2006)).  Magistrate Judge Dolinger properly concluded that a reduction of 20% across-the-board in the total sum billed by Gibney Anthony is appropriate to correct for the firm's excessive work.  See e.g., Santa Fe Natural Tobacco Co., 2002 WL 498631, at *3.

In all other respects, the partners, associates, and paralegals rates fall well within the standard hourly rates for this District.  See Apex Creative Int'l Corp., 2010 WL 23320, at *10-11 (determining that hourly rates of $320.00 to $540.00 for partners and associates were reasonable). Accordingly, Magistrate Judge Dolinger properly accepted and applied the rates to the compensable time documented by Chanel's attorneys. See id. Therefore, this Court awards $21,828.40 in attorneys fees, consisting of $8,050.00 for Mr. Gaffigan's work and an additional $13,778.40 for Gibney Anthony.

**Costs & Investigative Fees**

The Lanham Act provides that a court can award costs to a prevailing party who meets their burden of explaining and documenting their expenses. 15 U.S.C. § 1117 (a); Xiao Feng Ye, 2007 WL 2693850, at *6-7 (rejecting application for investigative fees and service of process costs because of a lack of contemporaneous time records and documentation). In the instant case, plaintiff adequately supported its request for $575.00 in costs. See id. Consequently, Plaintiff's $350.00 filing fee for this federal action and $225.00 process server fees are recoverable costs. See Nature's Enters., Inc. v. Pearson, 2010 WL 447377, at *10 (S.D.N.Y. Feb. 9, 2010). Magistrate Judge Dolinger, thus, properly determined the award of $575.00 in costs to be appropriate. See id.

Investigative fees may also be recoverable as expenses in trademark-infringement cases under the Lanham Act, if shown to be necessary and accompanied by proper documentation. See Gordashevsky, 558 F. Supp. 2d at 539 ("Investigative charges are also recoverable under the Lanham Act."); but see Nature's Enters., Inc., 2010 WL 447377, at *10 (declining to award investigative fees where plaintiff failed to explain why it was necessary to hire a private investigator). In November 2005, Chanel hired Robert Holmes to investigate the suspected sale of counterfeit Chanel products by Defendants.  See 2009 Holmes Decl. ¶ 3. At a rate of $755.00 an hour, Holmes conducted two domain-name searches of an online database, in November 2005 and April 2007, and made one online purchase from Gardnerinc.net in December 2005. See 2008 Holmes Decl. ¶¶ 4- 5, 10. However, Plaintiff failed to (1) identify who hired and/or supervised the private investigator, (2) explain why the online research conducted was beyond Plaintiff's own capabilities, (3) explain how the $755.00 investigative fee was calculated, or (4) provide contemporaneous time records of invoices or documentation of the investigative services.

11

Indeed, Plaintiff's only attempt to justify the investigative fee was a bald assertion of necessity. Magistrate Judge Dolinger properly weighed these factors and decided against the recovery of the investigative fees.  As a result, Plaintiff's request for $755.00 in investigative fees is denied.

## Conclusion

The Court adopts the Report and Recommendation of the Magistrate Judge.  Judgment is entered awarding plaintiff $36,000.00 in statutory damages on its Lanham Act claims, $21,828.40 in attorneys' fees, and $575.00 in costs, totaling $58,403.40.

Plaintiff's request for a permanent injunction against Defendants is granted.  Defendants are prohibited from using any of Chanel's trademarks in connection with the advertisement, promotion, distribution, or sale of any unauthorized or counterfeit goods.

Dated: January 21, 2011
     New York, New York

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

12